## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 24-CR-95 (JMB/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Mathew Richard Adamson, | |
| Defendant. | |

This matter is before the Court on the Government's Motion to Revoke the Magistrate Judge's Order of Release and to detain Defendant Mathew Richard Adamson pending resolution of these proceedings, pursuant to 18 U.S.C. § 3145(a). (Doc. No. 29.) For the reasons outlined below, the Court grants the Government's motion.

## BACKGROUND

In November and in December 2023, Adamson was arrested and subsequently charged in Olmsted County District Court with multiple violations of state law for attempting to solicit an undercover officer, who was posing as a minor, to engage in sexual conduct; for possessing child pornography; and for invading privacy with a surreptitious device. He was also charged with misconduct of a public officer because, at the time of his arrest, Adamson was employed as a Jail Corporal at the Olmsted County Jail in Rochester, Minnesota. Adamson was released on bail.

1

On April 11, 2024, the Government filed an Indictment, charging Adamson with the following five offenses: (1) Production and Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a), (e); (2) Production and Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a), (e); (3) Production and Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a), (e); (4) Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2); and (5) Coercion and Enticement in violation of 18 U.S.C. §§ 2422(b), 3559(e).  Adamson was arrested on April 16, 2024 (Doc. No. 11) and on April 22, 2024, Magistrate Judge Dolce. J. Foster conducted a detention hearing.  (Doc. No. 17.)

In its submissions at the detention hearing, the Government proffered the following evidence: Adamson's criminal conduct first came to the attention of law enforcement authorities in November 2023, when the Rochester Police Department and Minnesota Bureau of Criminal Apprehension conducted a proactive undercover chat operation on the social media app "Whisper."  During the investigation, a law enforcement officer made a post on Whisper posing as a 13-year-old girl.  Adamson responded to the post and solicited the undercover officer to engage in sexual conduct.  Adamson told the officer that he had previously engaged in sexual conduct with minors and would "usually exchange alcohol or cigs for . . . copping a feel under clothes, hand jobs, or blow jobs."  Adamson arranged to meet in person with the undercover officer at a local mall.  When he arrived, law enforcement officers arrested him.

According to the Government, after Adamson's arrest, law enforcement officers searched his electronic devices and uncovered multiple images and videos containing child

pornography, including an explicit image of the twelve-year-old girl referred to in the Indictment as Minor C, who Adamson solicited on Whisper in July 2023. Law enforcement officers interviewed Minor C, who explained that, in July 2023, she chatted on Whisper with Adamson, who suggested that they meet up. Minor C explained that she met Adamson in his truck at a local park in the Rochester area. Minor C recalled that she told Adamson that she was only twelve years old. At the hearing, the Government stated that, during this encounter, "Adamson took a video of her breasts and had her carry out sexual acts on him."

Again, according to the Government, not long after his release on his state charges, a family member discovered Adamson attempting to destroy two hard drives. Those hard drives were later seized and searched. They contained videos and images from multiple bathrooms within Adamson's home, which Adamson had accumulated over several years and which included explicit images of adult women and two thirteen-year-old girls, Minor A and Minor B. The hard drives also contained screen captures from Olmsted County Jail's surveillance cameras (where Adamson worked), which showed multiple female detainees in various stages of undress in the changing room at the jail.

The Government also offered as exhibits two letters from parents of the minor victims. (Doc. Nos. 14-1, 15.) The letters requested that Adamson be detained pending trial and expressed concerns over the safety of the victims and the community. (*Id.*) Finally, the Government stated that Adamson's proposed residence if released (his sister's home) is within a 2-mile radius of a middle school, an elementary school, a rec center, and multiple parks and playgrounds.

For his part, Adamson proffered the following evidence at the hearing: Adamson is forty-five years old and has lived in Minnesota all of his life—except for four years while attending the University of North Dakota. His entire immediate family lives in Minnesota. Adamson has no ties to any other area of the United States and last left the country ten years ago for a vacation. Adamson has no previous criminal history and no history of drug or alcohol abuse. For the past twenty years, Adamson was employed by the Olmsted County Sheriff, and he worked as a Jail Corporal at the Olmsted County Jail for several years preceding his November 2023 arrest. Adamson has been on pretrial release on his state charges since November 2023 and has fully complied with all terms and conditions of his release. Those conditions were modified twice to allow him limited use of a cell phone and to have unsupervised contact with his two minor sons. Adamson sought mental-health assistance and began weekly therapy sessions following his arrest. Adamson specifically proffered that he "sought mental health assistance in order to help him cope with the charges and many collateral consequences including loss of a long-term employment, likely end of his marriage, widespread publicity of the charges and a potential lengthy prison sentence." He is currently prescribed an anti-depressant.

If released on his federal charges, Adamson would be subject to supervision by federal Probation and Pretrial Services (Probation), the Minnesota Department of Corrections, and third-party custodians. One of those third-party custodians previously prevented Adamson from destroying two hard drives and the other brought Adamson's passport to the detention hearing. Aside from the present allegations, there is no evidence that Adamson had any other improper direct contact with minors or any contact with Minor

4

C since July 2023. Finally, police reports indicate that Minor A and Minor B, who the Government alleges were surreptitiously recorded, told police that Adamson has never, to their immediate knowledge, acted inappropriately toward them.

At the end of the detention hearing, the Magistrate Judge ordered Adamson's release subject to certain conditions, including home confinement, GPS location monitoring, and remaining in the custody of designated persons. (Doc. Nos. 18, 19.) The Magistrate Judge also prohibited Adamson from possessing or using a computer or other internet-capable device, having access to an internet connection, and from associating with any persons under the age of eighteen (except for Adamson's two minor children). (*Id.*) The Government now requests that the Court revoke the Magistrate Judge's order and detain Adamson pending trial.

## DISCUSSION

In its motion for review of the order of release, the Government argues that Adamson is a danger to the community[1] because the allegations and proffered evidence involve crimes committed against at least six minors, show that he attempted to destroy evidence, and indicate that Adamson is technologically sophisticated—he used hidden cameras to create child pornography and to conceal his efforts. For the reasons discussed below, the Court concludes that Adamson should be detained pending trial.

A defendant may be detained pending trial "only if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably*

---

[1] The Government does not argue that Adamson is a flight risk.

*assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions will *reasonably assure* the defendant's appearance." *U.S. v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quotation omitted) (emphasis in original).

Adamson does not dispute that a rebuttable presumption of detention applies in this case given the offenses with which he is charged. *See* 18 U.S.C. § 3142(e)(3)(E). As a result, Adamson "bears a limited burden of production—not a burden of persuasion—to rebut the presumption of detention by coming forward with evidence he does not pose a danger to the community or a risk of flight." *Abad*, 350 F.3d at 797. When a criminal defendant rebuts it, "the presumption favoring detention does not disappear entirely." *Id*. Instead, it "remains a factor to be considered" by the Court, and the Government has the ultimate burden to show, by clear and convincing evidence, that no condition or set of conditions will reasonably assure the safety of the community. *Id.* Courts consider the following four statutory factors when deciding whether to release or detain a defendant:

> (1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual.

*Id.* (citing 18 U.S.C. § 3412(g)). This Court reviews the Magistrate Judge's order of release de novo, 18 U.S.C. § 3145(a); *U.S. v. Maull*, 773 F.2d 1479, 1482–85 (8th Cir. 1985), based

on the evidence presented to the Magistrate Judge during the April 22, 2024 detention hearing.[2]

The Court concludes that the Government has met their burden on this motion.[3] The four factors in 18 U.S.C. § 3142(g) weigh heavily in favor of Adamson's detention. Turning first to the nature and circumstances of the offense, the Court notes that the charges against Adamson involve allegations that he coerced multiple minors into producing sexually explicit material, coerced a minor into engaging in sexual activity with him in a local park, and possessed images of a minor being subjected to sexual activity with an adult. Such conduct is undoubtedly dangerous to the community, and Adamson makes no argument to the contrary, conceding that these charges "are extremely serious" and "this factor favors detention." (Doc. No. 12 at 6.)

The Court also determines that the second factor—the strength of the evidence—weighs heavily in favor of detention. Adamson acknowledges the strength of the Government's evidence, characterizing the evidence against him as "significant." (Doc. No. 12 at 7.) This evidence includes witness testimony, a forensic interview of one of the

---

[2] The parties' briefing references evidence not presented at the detention hearing. Because the Government did not request an evidentiary hearing to present new evidence, the Court does not rely on these references. Instead, its decision rests solely on the evidence that was before the Magistrate Judge at the detention hearing.

[3] As a threshold matter, Adamson has satisfied the limited burden of production necessary to rebut the statutory presumption in favor of detention given his ties to the community, his lack of criminal history, and the absence of a history of violating conditions of release. *See Abad*, 350 F.3d at 797.

minor victims, and data obtained from Adamson's personal electronic devices, among other items.

The third factor—which looks at Adamson's "history and characteristics"—is neutral. Adamson argues that his extensive local ties, lack of previous criminal history, and the fact that he was able to obtain pretrial release in both of his state cases, favor release. However, there are also uncontested facts that weaken the ties Adamson has to his community. For instance, Adamson lost a job he held for the past twenty years and is currently unemployed. In addition, Adamson himself acknowledged that the charges against him have generated substantial negative local publicity and, in his words, he is facing the "likely end of his marriage." Last, even though there are no allegations that Adamson violated the terms of his conditional release in state court, there are allegations that while on release, he attempted to destroy evidence of criminal activity. When balanced against these contrary facts, Adamson's ties to the community do not favor release and (at most) render neutral an otherwise adverse factor.

The fourth factor—the nature and seriousness of the danger Adamson may pose to any person or the community if released—strongly favors detention. In addition to the allegations that Adamson attempted to destroy evidence of his criminal activity while on release, it is uncontested that the minor victims and their parents fear for their safety and that of the community should Adamson be released. The charges also involve allegations of predatory behavior in numerous settings: at home, at work as a law enforcement officer in a jail, and at a public park. This proffered evidence demonstrates a brazen disregard for

the rule of law and for the rights and safety of others, including vulnerable members of society.

Finally, the Court agrees with the Government that the proposed conditions of release do not reasonably assure the safety of the victims and the community. Although Adamson's proposed conditions of release include a prohibition on access to the internet or a computer, this condition of release is inherently difficult to enforce. *See United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007.) That is especially true given that in this case, enforcement relies on an honor system for all practical purposes. Specifically, the Court is concerned that Adamson either has or could obtain wifi passwords at the proposed residence. Likewise, because the proposed residence is next door to the home where he lived with his wife and minor children when the offenses occurred, the proposed conditions do not adequately prevent Adamson from obtaining access to the internet through the network at his home. The Court is also concerned about Adamson's efforts to use technology to both commit and conceal the alleged crimes. Given that the pattern of unlawful conduct went undetected from 2015–2023 and Adamson's background in law enforcement, this Court is persuaded that the proposed conditions do not reasonably assure public safety. *See United States v. LaFontaine*, 210 F.3d 125, 135 (2d Cir. 2000) (observing that "electronic surveillance . . . can be circumvented" and that "[h]ome detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills" (quotation omitted)).

The Court concludes that the Government presented clear and convincing evidence that no condition or combination of conditions exist to reasonably assure the safety of the victims or the community if Adamson is released.

**ORDER**

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Government's Motion to Revoke Pretrial Release (Doc. No. 29) is GRANTED.

Dated: May 3, 2024                                    /s/ Jeffrey M. Bryan
                                                      Judge Jeffrey M. Bryan
                                                      United States District Court